## Rubsam *v.* Cobb.

Bleckley, C. J.—No 'question of law is involved in this case save well-settled principles, and upon the facts (for which see the official report), the judge did not abuse his discretion in granting the order for temporary injunctions on the terms stated in the order.

February 26, 1890                              *Judgment affirmed.*

Injunction.   Practice.   Before Judge Fort.   Sumter county.   At chambers, July 16, 1889.

Mrs. Rubsam by her petition alleged that on January 30, 1889, she purchased of Cobb certain land in Americus, being the southeast corner of a four acre tract, bounded on the north by said tract, on the east by Reese street, on the south by Church street and on the west by the land of Julia Robinson; which description is the same as given in Cobb's deed to her.   But he now claims that he reserved from the land sold to her a strip thirty feet wide, lying between the land she purchased and the land owned by Julia Robinson, for the purpose of opening a street through the land; and he has repeatedly threatened to tear down her fence and open the street, in order that by means of it he might open up the four acre tract belonging to him; and on the 9th of July, 1889, he began the work of tearing down the fence, and did so notwithstanding her remonstrances, and has begun grading and ploughing the land for the purpose of opening up the street, and has threatened so to continue.   He has damaged her fifty dollars by the destruction of her fence, and the malicious acts aforesaid, and the expense to which she has been put thereby.   He is totally insolvent, and he threatens to tear down the fence as often as she may erect it, and to exercise ownership and authority over it.   Wherefore she prays for injunction, and an accounting to her for the fifty dollars damages, as well as for general relief, etc.

Cobb answered that he made the trade for the land with Rubsam, who claimed to be acting for his wife, and at whose request the deed was made to her.   He sold the land with the western boundary an alley, and at the time of the sale it was clearly understood between the parties that a certain plank fence that ran north and south was to be the west line, and that there was an

alley or a street on the west side of said fence, which was not then thrown open but was on the land of Cobb. Rubsam, acting as agent for his wife, offered to buy this strip from Cobb after the trade was made, and Cobb refused to sell it, it being necessary to have it for a way to his other land. The deed was drawn by one Bivins, and by mistake shows the western boundary to be the land of Julia Robinson; and Cobb did not notice this mistake until after the deed was executed and delivered. As soon as he found it out he applied to Rubsam to have it corrected, and although Rubsam knew of the mistake and so admitted, he refused to correct it. He has, however, treated the fence as the line on the west side, and has admitted to several persons that it was the line. Although Cobb did not know it at the time of the sale, there were four persons interested in the land he sold to Mrs. Rubsam, and the land was to be divided into four equal parts, which was done after the deed was made, taking the plank fence as the west line and Mrs. Rubsam taking the west lot, the four persons going into possession of the land as thus divided. Cobb is amply solvent. Rubsam, as agent for his wife, went in the night-time and placed a wire fence around the strip without the consent of any one, knowing that he had no right to do so. Mrs. Rubsam is wholly insolvent, and in view thereof and of the mistake in the deed, Cobb prays that the mistake be corrected and that Mrs. Rubsam and her agent be enjoined from interfering in any way with the land west of the plank fence.

Upon the hearing for injunction, it was admitted that Cobb had returned for taxation for 1889 property to the amount of $3,100; that the only realty that he possessed was returned at the value of $2,500; and that on April 1, 1888, he conveyed it to secure a debt for $1,250 (nearly $800 of which has been paid) to Johnson and Harrold, and it has not since been reconveyed. The

four acre tract is included in this conveyance. Rubsam testified that he was agent for his wife about the purchase of the property, and that the facts stated in the petition were true. There never was any understanding, in the purchase of the land, that the plank fence should be the west line and that there was an alley or street on the west side of the fence, etc., but the description of the premises contained in the deed from Cobb to Mrs. Rubsam was of the premises as bargained for, and there was no mention whatever to witness of any alley or street to run between the premises of Julia Robinson and of Mrs. Rubsam. There never had been a street or an alley at that place, but up to a few days ago it was enclosed just as witness purchased it, and would be so now but for the acts of Cobb. It is untrue that Cobb ever asked witness to change the deed, until a few weeks ago, after Cobb had determined to use this strip, and witness then told Cobb that the property of his wife extended to Julia Robinson's land and no one but the courts could change it; and thereupon Cobb began his acts of trespass. After Mrs. Rubsam bought the land, she sold three lots of it (beginning at Reese street and running west, each being 51 feet) to Carson, Cotney & Davis and Reese, the remainder to be her property up to Julia Robinson's land. When Rubsam bought he asked Cobb to make the deed by feet; Cobb declined to do it, but expressly said he would deed to Julia Robinson's land. Cobb is a head of a family. Witness has no right to give or admit away any of his wife's property. Julia Robinson testified that she bought her land from Cobb about eleven years ago, and has been in quiet, peaceable possession ever since; and that the fence around her premises on the east bounds the land she took possession of, and her fence is now and has been just to the eastern point of where she bought, although she has used the interven-

ing space of twenty or thirty feet as a place on which to dry clothes. She has never given Cobb any authority to tear down any fence or open up any alley to the eastern boundary of her line, and the deed to Mrs. Rubsam conveys to the point where deponent's fence has been ever since she went into possession; the said thirty feet never since she purchased having been used by any one except herself, until recently, when Rubsam caused a fence to be run to deponent's land. Bivins testified that he wrote the deed from Cobb to Mrs. Rubsam, from the dictation of Cobb and as Cobb dictated and described the premises thereby conveyed. Cotney and Carson, two of the persons who purchased a portion of the land which Mrs. Rubsam bought of Cobb, testified that their understanding, before and after her purchase, was that the western boundary of it was the land of Julia Robinson, and so was their understanding when they paid for and received their shares from Mrs. Rubsam or her agent, as had been agreed upon between them before the purchase; and that it was not their understanding, either before or after the purchase, that there was to be a street or alley between the land purchased by Rubsam and the land of Julia Robinson.

Cobb testified to the same effect as his answer, and that he owned in his own right realty and personalty in Americus worth four thousand dollars, and his liabilities did not exceed five or six hundred dollars. One Sullivan testified that he had heard Rubsam say, several times since the deed was made, that he only bought to the plank fence on the west, and that the fence was the west line. One Mayo testified to the same effect, and also that Rubsam told him that he had found out there was a mistake in Julia Robinson's deed and that he was going to rent her house from her and get possession and then would hold it, and asked deponent how long a person would have to hold possession in this State to

get title. This was denied by Rubsam. Mayo also testified that Cobb showed him in the presence of Rubsam where the west line of Rubsam's lot was, stating that there was to be a street or alley on the west side of the plank fence, and that that fence was the west line ;. and to the best of witness's knowledge and belief, Rubsam himself so stated. Cotney also testified that it was understood between Rubsam, for his wife, and the parties interested in the purchase of the lot by Rubsam from Cobb, that the lot was to be divided into four equal parts; that after the purchase by Rubsam, they measured the line on the south side along Church street beginning at the plank fence, said fence being the west line of the lot, measuring along Church street to Reese street; that the distance along Church street to Reese street was 207 feet; that they divided the lot into four equal parts, after deducting three feet on the east side so as to make the east line straight with the lot of Mayo, which was on the north side of the lot, giving to each of the four lots fifty-one feet front on Church street; that the plank fence was taken as the line on the west; and that in dividing the land, Rubsam took the lot next to the plank fence, and it was understood that the north line of the lot was to be the same as the south line and the east and west lines were to be 210 feet, making the lot 207 by 210 feet.

The judge decided that the injunction should issue as prayed for, unless Cobb should give bond with good security, conditioned to pay all damages which plaintiff might sustain in the event she recovered in her action, or in any other that might thereafter be instituted for that purpose. He also passed an order enjoining plaintiff as prayed for by defendant, without any bond whatever. The plaintiff excepted.

HINTON & CUTTS, for plaintiff.

L. J. BLALOCK and B. P. HOLLIS, for defendant.